IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | CASE NO. BK15-82016 |
| CHARLES DONALD LEONARD ) | A15-8044 |
| and MARGARET ROSE LEONARD, ) | |
| ) | CHAPTER 11 |
| Debtor(s). ) | |
| CHARLES DONALD LEONARD and ) | |
| MARGARET ROSE LEONARD, doing ) | |
| business as LEONARD CATTLE COMPANY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| LEIGH MURPHY, doing business as ) | |
| MURPHY CATTLE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the court on the parties' motions for summary judgment (Fil. No. 18 and Fil. No. 34). Victor E. Covalt III represents the Plaintiffs (individually and collectively, "Leonard") and Robert M. Gonderinger and David J. Skalka represent the Defendant ("Murphy"). Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motions were taken under advisement without oral arguments.

For the reasons discussed below, Leonard's motion is denied and Murphy's motion is granted.

This is a dispute over the validity and priority of interests in cattle. In brief, Leonard arranged to purchase feeder cattle from Murphy. The cattle were delivered to a third party's feedlot and Leonard issued checks to Murphy and other sellers as payment for the cattle. Several of the checks were not honored. Murphy received only partial payment for the cattle and filed a state law replevin action. The state court issued an order of replevin shortly before the bankruptcy petition was filed. Murphy relies on the Nebraska Uniform Commercial Code in attempting to exercise his right to reclaim the cattle. Leonard argues that the right of reclamation is unenforceable in light of the debtor in possession's avoidance powers under the Bankruptcy Code.

Summary judgment requires an analysis of the case's facts and a determination as to whether or not any genuine factual issues exist. Entry of summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.

R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## *Background*

The parties agree on the following facts:

1. At the times of the events in question, Leonard was in the business of buying and selling cattle as a commission dealer and for his own account.

2. Murphy is an individual residing in New Mexico and doing business as Murphy Cattle Company. He has entered an appearance in the above-captioned bankruptcy proceeding.

3. Leonard filed for relief under Chapter 11 of the Bankruptcy Code on December 14, 2015.

4. Exhibit A to the amended complaint is a true and correct copy of a contract entered into on or about July 10, 2015, under which Leonard agreed to purchase yearling steers from Murphy under terms and conditions set forth therein.

5. Leonard paid a down payment of $10,000.00 at the time of execution of the contract, which was received and accepted by Murphy.

6. On September 23, 2015, Murphy transferred to Leonard and Leonard received and accepted delivery of 395 steers from Murphy at Fraser, Colorado. The steers' average weight was more than 1,030 pounds per steer. The remaining purchase price for the steers was $802,910.00.[1]

7. Leonard paid the balance of the purchase price to Murphy via five checks totaling $802,910.00:

    a. Check No. 20015 in the amount of $150,680.97 payable to Ketchem Livestock.
    b. Check No. 20016 in the amount of $7,729.74 payable to Bridger Ketchem.
    c. Check No. 20017 in the amount of $7,729.74 payable to Pike Ketchem.
    d. Check No. 20018 in the amount of $41,208.96 payable to Andy Murphy.
    e. Check No. 20019 in the amount of $595,560.59 payable to Murphy Cattle Company.

---

[1] The contract called for a price of $210.00 per hundredweight for steers weighing 980 pounds. Accordingly, 395 head multiplied by $210.00 multiplied by 9.8 equals $812,910.00, reduced by the $10,000.00 down payment.

8. On September 23, 2015, Leonard caused possession of the 395 steers purchased from Murphy to be delivered to Sweetwater Cattle Company ("Sweetwater") in Buffalo County, Nebraska, to be fed, marketed, and sold.

9. On the same date, Leonard received a loan of $598,402.16 from Sweetwater.

10. Check No. 20018 for $41,208.96 was honored by Pinnacle Bank on October 5, 2015, but Check No. 20019 to Murphy for $595,560.59 was returned for insufficient funds on October 6, 2015. Check Nos. 20015, 20016, and 20017 were returned on or about October 14, 2015, as "closed account."

11. Leonard informed Murphy sometime after October 1, 2015, that the four checks would not be honored by the bank.

12. Leonard paid a total of $51,208.96 ($10,000.00 down payment and Check No. 20018) to Murphy on the contract, which amounts to payment for 24 head.

13. The remaining indebtedness on the purchase contract due from Leonard to Murphy is $761,701.04.

14. At all relevant times, the 395 steers were in the possession of Sweetwater.

15. On or about November 3, 2015, Murphy served a summons and a complaint against Leonard and Sweetwater entitled *Murphy v. Leonard, et al.*, Case No. CI15-610, in the District Court of Buffalo County, Nebraska, in an attempt to reclaim 371 of the steers under a state law claim for reclamation under Neb. U.C.C. §§ 2-507 and 2-511 (hereafter "Replevin Action").

16. On November 3, 2015, Murphy also served on Leonard a request for delivery of the 371 steers.

17. Leonard answered and defended the Replevin Action. Sweetwater answered and defended said Replevin Action.

18. The district court issued an "Order to Clerk in Replevin" which was filed on December 2, 2015. The order states as follows:

> Being duly advised in the premises and based upon the evidence presented, the Court finds as follows:
>
> 1. Defendant Sweetwater Cattle Company, L.L.C. ("Sweetwater") is in possession of 395 steers identifiable by Leonard's brand registered in the State of Colorado (the "Assets").

2. The Assets are the subject of a July 10, 2015 cash sale contract between Plaintiff Leigh Murphy ("Murphy") as seller and Defendant Charles Leonard ("Leonard") as buyer, the terms of which required payment upon delivery to Leonard.

3. At Murphy's delivery of the Assets to Leonard on September 23, 2015, Leonard paid the remaining purchase price to Murphy by giving Murphy five checks totaling $802,910.

4. One check for $41,208.96 cleared and Murphy received those funds. The other four checks were dishonored by Leonard's bank and were returned to Murphy. Leonard has not paid the remaining purchase price for the Assets.

5. Leonard delivered the Assets to Sweetwater on September 23, 2015 to be cared for, fed, marketed and sold on terms between him and Sweetwater. Sweetwater did not purchase the Assets. On September 23, 2015, Sweetwater and FCS [Farm Credit Services of America] advanced $598,402 to Leonard as a loan. There are other loans from Leonard to Sweetwater and assigned to FCS. Sweetwater and FCS claim the loans from Leonard are secured by a first priority lien on the Assets which claim this Court need not and does not rule upon in this Order.

6. Leonard has not paid for 371 steers of the Assets.

7. Leonard has no current right to possess 371 steers of the Assets, any prior right to possession is not resolved herein.

8. Murphy is entitled to reclaim the 371 steers that have not been paid for as against Leonard, and replevin is the appropriate means to enforce Murphy's right to reclaim. *Peck v. Augustin Bros. Co.*, 203 Neb. 574, 279 N.W.2d 397 (1979). Murphy's complaint for replevin was timely filed.

9. Plaintiff has raised a bona fide issue as to whether the Plaintiff is the owner of said property and whether Plaintiff has a special ownership or interest in 371 steers of the Assets, but that it appears sufficiently probable to the Court that Plaintiff will prevail on the merits. This finding is not in any manner a determination regarding the right and priority to the proceeds of the sale of those 371 steers as between Plaintiff, Sweetwater, and FCS.

    10.      There is a bona fide issue as to whether said property is wrongfully detained by the Defendant Sweetwater.

    11.      Sweetwater, FCS, and the Plaintiff have stipulated that the 371 steers shall remain at Sweetwater to be fed, marketed, and sold by Sweetwater as agent for Plaintiff based upon Sweetwater's usual and customary practices and terms of payment for Sweetwater's services equivalent to those being charged Leonard, with the proceeds of any sale of [sic] to be paid into this court until determination of those parties' dispute as to the rights and priorities to such proceeds between Plaintiff, Sweetwater, and FCS; provided, that Sweetwater will be entitled to be paid from the sale proceeds the actual and reasonable feed and yardage expense related to care of the 371 steers consistent with this stipulation, with the balance of the proceeds to remain in the Court until further Order as previously provided herein.

The Plaintiff claims in his Complaint that at no time did title ever transfer to Leonard. This Court need not and does not decide that issue. The Plaintiff claims Defendants Sweetwater and FCS have no right to possess the Assets superior to Plaintiff. With the stipulation between those parties this Court does not decide that issue at this time. Sweetwater and FCS claim that they have a lien or liens in the Assets securing repayment of indebtedness owed by Leonard to Sweetwater to which it claims Murphy's interest is subject to. This Court need not and does not decide that issue, as it is not an issue regarding possession. The issue in replevin is the right to immediate possession of the property. *Arcadia State Bank v. Nelson*, 222 Neb. 704, 386 N.W.2d 451 (1986). Matters foreign thereto ". . . must be excluded from consideration and are not available as defenses." *Id* at 711, 386 N.W.2d at 457.

. . .

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that the Clerk of the Court issue an Order for Delivery of 371 steers identifiable by Plaintiff's brand to the Plaintiff subject to the stipulation between him and Sweetwater and FCS pending trial upon the merits of this action. The return day of the Order shall be 40 days after its issuance. By the stipulation of Plaintiff, Sweetwater, and FCS, the Order shall not be served upon Defendant Sweetwater as a means to take physical possession of the 371 steers from Sweetwater; the 371 steers shall remain at Sweetwater to be fed, marketed, and sold by Sweetwater based upon Sweetwater's usual and customary practices on terms of payment for Sweetwater's services equivalent to those being charged Leonard. Sweetwater and FCS are ordered to pay into this Court the proceeds of any sale of the 371 steers until determination of the dispute as to the rights and priorities to such proceeds between Plaintiff, Sweetwater, and FCS; provided, that Sweetwater will be entitled to be paid from the sale proceeds the actual and reasonable feed and yardage expense related to care of the 371 steers consistent with the Plaintiff's, FCS' and Sweetwater's stipulation, with the balance

of the proceeds to remain in the Court until further Order as previously provided herein.

Fil. No. 20-1, at 2-5.

19. Murphy did not have any U.C.C. filings on record with the Secretary of State's office as of the date of the petition.

20. On December 17, 2015, three days after the filing of the bankruptcy petition, Murphy filed a motion for relief from stay for the purpose of continuing with its Buffalo County replevin action.

21. A stipulated order granted Murphy's motion for relief from stay in part to permit Sweetwater to sell the cattle at the appropriate time for the market, and deposit the proceeds with the court pending resolution of the parties' rights thereto.

*The Pleadings and Motions*

Leonard makes six claims for relief in his amended complaint. In "Claim 1," he alleges that Murphy's demand for reclamation and his prosecution of the Replevin Action in state court, including obtaining possession of 371 steers, was a transfer of property of the bankruptcy estate in consideration of an antecedent debt, made while Leonard was insolvent, and which would enable Murphy to receive more than he would if the transfer had not been made and the debt were treated as an unsecured debt under Chapter 7. This claim is apparently an assertion that Murphy's reclamation of the cattle is an avoidable preference under 11 U.S.C. § 547. Also in Claim 1, Leonard alternatively argues that the sale agreement was modified orally and thereby converted into a sale of goods on credit under Neb. U.C.C. § 2-702 (and its timing restrictions on reclaiming goods), apparently in an effort to circumvent any right to reclamation as a cash seller under Neb. U.C.C. § 2-507.

Leonard's "Claim 2" is that any right of reclamation held by Murphy is subordinate to the debtor in possession's avoidance powers under 11 U.S.C. § 546(c) because the cattle were delivered more than 45 days prior to the petition date and the seller did not make a timely written demand for reclamation. Leonard alternatively argues in his Claim 2 that the right of reclamation can only be asserted in an adversary proceeding, and no such adversary proceeding has been filed.

Leonard's "Claim 3" is that Murphy's request for relief from the automatic stay is an attempt to obtain a transfer of property post-petition, in violation of § 549.

Leonard's "Claim 4" is that the debtor in possession, as trustee, may avoid any transfer of property by the debtor that is voidable by a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists, under § 544(a)(1).

Leonard's "Claim 5" is that any interest Murphy has as of the filing of the bankruptcy case is subject to being avoided as a statutory lien which is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

Leonard's "Claim 6" is that the debtor in possession, with the powers of a trustee, is entitled to recover either the property transferred or the value thereof from Murphy as an immediate transferee to the extent he receives the steers or any interest therein or the value thereof.

In his answer, Murphy asserts that the transaction was a cash sale and Leonard's title and right to possession of the cattle was conditional on payment, and that upon dishonor of the checks, Leonard lost any claim or right to the cattle. Murphy further argues that the *Rooker-Feldman* doctrine deprives this court of jurisdiction over this dispute and that this court should abstain from reaching the merits.

Leonard now moves for summary judgment on the basis that Murphy's asserted right of reclamation is avoidable. Leonard first argues that Murphy's reclamation right is an unperfected security interest which is avoidable by the trustee as a lien creditor under § 544. Leonard then argues in the alternative that if Murphy's reclamation right is deemed to be a statutory lien, it is subject to defeat by a good-faith purchaser for value and may be avoided under § 545. Finally, Leonard argues that the goods at issue were delivered more than 45 days prior to the petition date, so the § 546(c) limitations on the trustee's avoidance powers are inapplicable.

Murphy also moves for summary judgment, asserting that this court lacks subject-matter jurisdiction over Leonard's claims, and alternatively, that the court should exercise its discretionary authority to abstain under 28 U.S.C. § 1334(c)(1). Murphy further argues that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law on the merits.

## *Discussion*

The jurisdictional questions must be addressed before the merits of the action can be reached.

> "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 7 Wall. 506, 514, 19 L. Ed. 264 (1868). . . . The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S. Ct. 510, 511, 28 L. Ed. 462 (1884).

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

The court has an independent duty to ascertain whether or not it has jurisdiction. "Courts are obligated to examine their own jurisdiction and subject matter jurisdiction may be raised at any time, by a party or the court, sua sponte." *Moffitt v. America's Serv'g Co. (In re Moffitt)*, 406 B.R. 825, 829 (Bankr. E.D. Ark. 2009) (quoting *May v. Missouri Dep't of Revenue (In re May)*, 251 B.R. 714, 719 (B.A.P. 8th Cir. 2000)).

Murphy argues that this court lacks subject-matter jurisdiction because Leonard is essentially asking the court to reverse the Buffalo County District Court's findings, in violation of the *Rooker-Feldman* doctrine. That doctrine precludes lower federal courts from deciding a collateral attack on a state court decision. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Lower federal courts, including bankruptcy courts, lack subject matter jurisdiction to engage in appellate review of state court determinations. *Goetzman v. Agribank, FCB (In re Goetzman)*, 91 F.3d 1173, 1177 (8th Cir. 1996) (citing *Keene Corp. v. Cass*, 908 F.2d 293, 296 (8th Cir. 1990)). The scope of the *Rooker-Feldman* doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).[2]

In determining whether *Rooker-Feldman* applies, the court must ascertain whether the party bringing the claim is seeking what in essence would be an appellate review of a state court decision. *Car Color & Supply, Inc. v. Raffel (In re Raffel)*, 283 B.R. 746, 748 (B.A.P. 8th Cir. 2002) (citing *Lemonds v. St. Louis County*, 222 F.3d 488, 492 (8th Cir. 2000) (*Rooker-Feldman* "forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions.")). *Rooker-Feldman* is narrowly construed. It does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court," because "[i]f a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Edwards v. City of Jonesboro*, 645 F.3d 1014, 1018 (8th Cir. 2011) (quoting *Exxon Mobil*, 544 U.S. at 293).

Under the facts of this case, *Rooker-Feldman* does not apply. The claims raised in Leonard's amended complaint are brought under the Bankruptcy Code and ask the court to rule in Leonard's favor upon application of the avoidance provisions of the Bankruptcy Code to the facts underlying the state court order. As such, it is not a collateral attack on the state court decision. In fact, counsel for Leonard properly summarized Leonard's position in its brief as follows: "Whatever the merits of [Murphy's] claim against Leonard individually under state law, the filing of a petition for reorganization on December 14, 2015, altered those rights . . . ."

---

[2]The state-court decision at issue need not be a final judgment. *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 n.1 (8th Cir. 1995).

As jurisdiction is properly in this court, Leonard's arguments in favor of summary judgment will be addressed in turn. First, he asserts that the Bankruptcy Code's "strong arm" powers in § 544(a)(1), which give a trustee the rights and powers of a hypothetical judicial lien creditor to avoid the transfer of an unperfected interest in the debtor's property, permit him to avoid Murphy's lien in the cattle because the lien was not perfected in accordance with state law prior to the filing of the bankruptcy case. The Bankruptcy Code gives the trustee (or debtor in possession) a hypothetical judicial lien that attaches to all of the property of the bankruptcy estate "and is superior to any other interest that is unperfected on the petition date." *Lovald v. Claussen (In re Claussen)*, 387 B.R. 249, 255 (Bankr. D.S.D. 2007). The trustee receives this superior interest even if he was aware of the prior unperfected interest. § 544(a); *Union Planters Bank, N.A., v. Burns (In re Gaylord Grain L.L.C.)*, 306 B.R. 624, 629 (B.A.P. 8th Cir. 2004).

Murphy's interest arises under the Uniform Commercial Code. The parties' contract for the sale and purchase of the cattle provided that Leonard would pay the balance of the purchase price upon delivery of the cattle. The transaction was clearly intended to be a cash sale, and Leonard's payment by dishonored check did not alter the nature of the sale. *Peck v. Augustin Bros. Co.*, 279 N.W.2d 397, 399 (Neb. 1979); *Rowse v. Platte Valley Livestock, Inc.*, 604 F. Supp. 1463, 1466 (D. Neb. 1985); Neb. U.C.C. § 2-507(2) ("Where payment is due and demanded on the delivery to the buyer of goods or documents of title, his right as against the seller to retain or dispose of them is conditional upon his making the payment due."); Neb. U.C.C. § 2–511(3) ("[P]ayment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment."). The U.C.C. "recognizes that the taking of a seemingly solvent party's check is commercially normal and proper and, if due diligence is exercised in collection, is not to be penalized in any way." Neb. U.C.C. § 2–511 cmt. 4.

Assuming for purposes of Leonard's motion for summary judgment that the transaction was a cash sale as Murphy asserts (which is discussed *infra*), the dishonor of Leonard's checks gave Murphy the right to reclaim the cattle through the remedy of replevin. Neb. U.C.C. §§ 2-507(2), -511(3), -702(2); *Peck*, 279 N.W.2d at 400; *Rowse*, 604 F. Supp. at 1466. That remedy allows the seller to undo the transaction, not simply to secure payment. *Guy Martin Buick, Inc. v. Colorado Springs Nat'l Bank*, 519 P.2d 354, 359 (Colo. 1974) (en banc); *Rowse* at 1467; *Bassett Furniture Indus., Inc. v. Wear (In re PFA Farmers Market Ass'n)*, 583 F.2d 992, 998 (8th Cir. 1978). It is undisputed that Murphy timely filed a replevin action and made written demand on Leonard for delivery or payment. The state court issued its order in replevin finding that Murphy was entitled to immediate possession of the cattle pending a trial on the merits of the case, the progression of which was interrupted by the filing of the bankruptcy case. As of the date of bankruptcy filing, Murphy had done all he needed to do in order to reclaim his title to the cattle under Neb. U.C.C. § 2-507(2).

Frankly, the parties spend far too much time in their briefs arguing the effect of the state court's possession order on this adversary proceeding. Is it a final order or a temporary order? Does it have preclusive effect? Is this court bound by it? Those questions, while certainly interesting, miss the real issue of whether the bankruptcy avoidance powers allow Leonard to unwind Murphy's reclamation under the U.C.C.

Leonard argues that if Murphy has a statutory lien, it is avoidable under § 545(2). Murphy has not claimed the existence of a statutory lien, nor is the right of reclamation considered to be a statutory lien. *PFA Farmers Market Ass'n*, 583 F.2d at 1002-03 (discussing reclamation under U.C.C. § 2-702 in a credit sale situation, it "is not an attempt to elevate a group of creditors that have historically found themselves in the general distribution of a bankrupt's estate. It is the exclusive substitute for the long respected right to reclaim. . . . We hold that the right of reclamation . . . is neither a priority in conflict with [the Bankruptcy Code] nor a lien subject to invalidation as a statutory lien . . . ."). Accordingly, this argument by Leonard is overruled.

Leonard argues that Murphy's Bankruptcy Code right of reclamation under § 546(c) is Murphy's only reclamation remedy at this point and that it is subject to the debtor in possession's avoidance powers. Section 546(c) states as follows:

> § 546. Limitations on avoiding powers
> . . .
> (c)(1) Except as provided in subsection (d) of this section and in section 507(c), and subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof, the rights and powers of the trustee under sections 544(a), 545, 547, and 549 are subject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case under this title, but such seller may not reclaim such goods unless such seller demands in writing reclamation of such goods —
> (A) not later than 45 days after the date of receipt of such goods by the debtor; or
> (B) not later than 20 days after the date of commencement of the case, if the 45-day period expires after the commencement of the case.
> (2) If a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in section 503(b)(9).

However, this section does not create a federal right of reclamation, but simply permits a seller to exercise a right of reclamation existing under non-bankruptcy law. *In re Dana Corp.*, 367 B.R. 409, 414 (Bankr. S.D.N.Y. 2007). If Murphy had delivered the cattle within 45 days before the petition date, and had followed the requirements in § 546(c)(1) for making a written demand for return of the cattle, then § 546 would apply to except his reclamation right from the debtor in possession's avoidance powers. However, it is uncontroverted that Leonard received the cattle more than 45 days before he filed bankruptcy. Murphy is not relying on this section for his right of reclamation, which he exercised prior to the filing of the bankruptcy case, and Leonard cannot use this section, or Murphy's non-compliance with it under the circumstances, as a shield to protect his avoiding powers.

In *Farmers Rice Milling Co. v. Hawkins (In re Bearhouse, Inc.)*, 84 B.R. 552 (Bankr. W.D. Ark. 1995), the Arkansas bankruptcy court explained:

> There is no dispute that [Seller's] oral demand complied with state law. Since the bankruptcy was filed after the ten day time limit for demanding reclamation had expired, the additional requirement of Section 546 became effective too late for [Seller] to comply with it. To retroactively apply the written requirement of Section 546(c) under the facts in this case would result in subjecting this reclaiming seller to a procedure different from the procedure applicable at the time the act to be done was required to be done. This would be inconsistent with fundamental principles of due process of law.

*Bearhouse*, 84 B.R. at 560. The court cited Eighth Circuit law interpreting the Bankruptcy Act for support:

> The Eighth Circuit, construing Missouri law, concluded that a reclaiming seller's rights are superior to the rights of a trustee under the old Bankruptcy Act.
>
>> Under § 70(a) of the Bankruptcy Act, 11 U.S.C. § 110(a) (1970), the trustee acquires title to the bankrupt's property as of the filing of the petition. But the trustee's title is subject, generally speaking, to the contract defenses and equities to which the bankrupt's title was subject.
>
> (citation omitted). *In re PFA Farmers Market Ass'n*, 583 F.2d 992, 994 (8th Cir. 1978). This statement has continued applicability under the Bankruptcy Code. 11 U.S.C. § 541(d); 5 Collier on Bankruptcy ¶ 541.24 (15th ed. 1987).

*Id.* at 561.

If Leonard were permitted to use § 546(c) as he argues, then Murphy would be deprived of the benefit of the existing state court order which has already granted him possession of the cattle. In addition, as noted above, there was no way that Murphy could have complied with § 546(c)(1) because, by its terms, it is inapplicable to the facts of this case as the cattle were delivered to Leonard more than 45 days prior to the bankruptcy petition date. Unlike other sellers who lose their rights under § 546(c), Murphy did not sleep on his rights. He took the necessary steps to reclaim the cattle under state law prior to bankruptcy filing, and his success in doing so should not be set aside because he did not, and was unable to, comply with this statutory section.

Finally, Leonard makes the alternative argument that the parties orally modified the contract to convert it from a cash sale to a credit sale. The only fact asserted in support of this argument is that the checks were apparently issued the day after the physical delivery of the cattle. Like the contract in *Peck*, the terms called for payment on delivery of the cattle. In *Peck*, the court found that checks and bank drafts, rather than cash, are the customary methods of payments for such transactions. The Nebraska Supreme Court ruled as a matter of law that "such conditional sales, paid by drafts drawn in a commercially immediate time frame and treated as money in hand by the parties, are cash sales." 279 N.W.2d at 400. Even the seller's courtesy of allowing the buyer a short

time to make good on checks that had been dishonored does not turn a cash sale into a credit transaction. *Rowse*, 604 F. Supp. at 1466. There is no evidence that Leonard's payment by check, placed in the mail on the day after delivery of the cattle, altered the terms of the contract and converted this into a credit sale, so this argument must fail.

Because Leonard cannot exercise his powers as a debtor in possession under §§ 544, 545, or 546 to avoid Murphy's interest in the cattle, his motion for summary judgment must be denied.

Murphy has filed a cross-motion for summary judgment, arguing that *Rooker-Feldman* precludes this court from reversing the Buffalo County District Court's Order to Clerk in Replevin; this court should abstain from hearing this matter; Murphy's reclamation right cannot be avoided as a matter of law; and Murphy is entitled to summary judgment on the merits.

The jurisdictional, abstention, and reclamation arguments have been addressed above in the discussion of Leonard's motion. However, Murphy's argument that he is entitled to summary judgment on the merits necessitates additional discussion because the amended complaint, in addition to the §§ 544, 545, and 546 arguments (denied above), also contains claims under §§ 547 and 549.

The purpose and elements of the preference statute have been explained by the Eighth Circuit Court of Appeals as follows:

> "Under the Bankruptcy Code's preference avoidance section, 11 U.S.C. § 547, the trustee is permitted to recover, with certain exceptions, transfers of property made by the debtor within 90 days before the date the bankruptcy petition was filed." *Barnhill v. Johnson*, 503 U.S. 393, 394, 112 S. Ct. 1386, 118 L. Ed. 2d 39 (1992). "This rule 'is intended to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy.'" *Lindquist v. Dorholt (In re Dorholt, Inc.)*, 224 F.3d 871, 873 (8th Cir. 2000) (quoting *Jones Truck Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund (In re Jones Truck Lines, Inc.)*, 130 F.3d 323, 326 (8th Cir. 1997)).
> "Title 11 U.S.C. § 547(b) requires that in order for a transfer to be subject to avoidance as a preference, (1) there must be a transfer of an interest of the debtor in property, (2) on account of an antecedent debt, (3) to or for the benefit of a creditor, (4) made while the debtor was insolvent, (5) within 90 days prior to the commencement of the bankruptcy case, (6) that left the creditor better off than it would have been if the transfer had not been made and the creditor asserted its claim in a Chapter 7 liquidation." *Buckley v. Jeld-Wen, Inc. (In re Interior Wood Prods. Co.)*, 986 F.2d 228, 230 (8th Cir. 1993). The trustee must establish each of these elements by a preponderance of the evidence. *Stingley v. AlliedSignal, Inc. (In re Libby Int'l, Inc.)*, 247 B.R. 463, 466 (8th Cir. B.A.P. 2000).

*Wells Fargo Home Mortgage, Inc. v. Lindquist*, 592 F.3d 838, 842 (8th Cir. 2010).

Leonard contends that Murphy's right of reclamation is voidable as a preference; in other words, that Murphy's exercise of his reclamation right pre-petition constituted a transfer of Leonard's interest in the cattle within 90 days before the bankruptcy petition was filed, and the transfer was on account of an antecedent debt owed to Murphy which left Murphy better off than he would have been absent the transfer and had he participated in a Chapter 7 distribution. Murphy argues that the reclamation voided Leonard's title to the cattle, so there was no "interest of the debtor" in that property existing on the petition date, nor was there an antecedent debt, because this was a cash sale. I agree.

The Nebraska Supreme Court and the Eighth Circuit Court of Appeals have both weighed in on this argument and determined that the exercise of reclamation rights is not a preferential transfer. In *Peck v. Augustin Bros. Co.*, the Nebraska Supreme Court said:

> Here, the reclamation under section 2-507(2), U.C.C., voided the buyer's ownership rights in the cattle and "the return thereof does not constitute a preferential transfer of property to a *creditor* of the bankrupt." 3, Part 2, Collier on Bankruptcy, P 60.18, at p. 844 (14th Ed., 1977). Application of the bankrupt's voidable preference would actually be a windfall to the buyer and his creditors because the estate would be enlarged, without cost, to the extent of the proceeds from the sale of the delivered goods. King, Voidable Preferences and the Uniform Commercial Code, 52 Cornell L.Q. 925, at p. 939, n.53 (1967). Reclamation is not a voidable preference because the title is voidable; thus, there is no transfer on account of an antecedent debt. See, *Matter of Telemart Enterprises, Inc.*, 524 F.2d 761, at p. 764 (9th Cir., 1975), cert. denied sub nom. *Holzman v. Alfred M. Lewis, Inc.*, 424 U.S. 969, 96 S. Ct. 1466, 47 L. Ed. 2d 736 (1976).

279 N.W.2d at 401.

In *PFA Farmers Market Ass'n*, the Eighth Circuit said:

> Finally, we note our agreement with the district court that reclamation here would not constitute a preferential transfer that is impermissible under § 60 of the Bankruptcy Act, 11 U.S.C. § 96 (1970). *See Collier on Bankruptcy, supra,* ¶ 60.18 at 843-45; Sebert, *supra* at 233-34; King, *Voidable Preferences and the Uniform Commercial Code*, 52 Cornell L.Q. 925, 939 (1967).

583 F.2d at 1003.

Accordingly, exercise of reclamation rights is not a preferential transfer. Further, § 549 does not apply since Murphy exercised his reclamation rights pre-petition, not post-petition.

Because, under the undisputed facts of this case, all of Leonard's claims and arguments fail as a matter of law, Murphy is entitled to entry of an order of summary judgment in his favor.

IT IS, THEREFORE, ORDERED: Leonard's motion for summary judgment (Fil. No. 18) is denied. Murphy's motion for summary judgment (Fil. No. 34) is granted. Separate judgment to be entered.

DATED: April 8, 2016.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Victor E. Covalt III
    *Robert M. Gonderinger
    *David J. Skalka
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.